## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

MARYANN POLENIK,

                      Plaintiff,

        v.

JANET YELLEN,

                      Defendant.

CIVIL ACTION NO. 3:22-CV-01691

(MEHALCHICK, J.)

## MEMORANDUM

Before the Court is a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) filed by Defendant Janet Yellen, Secretary of the Department of the Treasury, d/b/a Internal Revenue Service ("Defendant IRS"). (Doc. 19). Plaintiff Maryann Polenik ("Polenik") initiated this employment discrimination action by filing a complaint against Defendant IRS and her former supervisor at the IRS, Brooks Moser ("Moser") on October 26, 2022. (Doc. 1). On June 8, 2023, Polenik filed the operative second amended complaint, terminating Moser from this action. (Doc. 17). For the following reasons, the motion shall be **GRANTED** in part and **DENIED** in part. (Doc. 19).

## I.   BACKGROUND AND PROCEDURAL HISTORY

This employment discrimination case arises from alleged sexual abuse, harassment, and discrimination suffered by Polenik at the hand of her supervisor Moser while the two were employed by the IRS. (Doc. 17). Polenik's allegations range from Moser threatening to put Polenik on a performance improvement plan because she slept at her boyfriend's house to Moser breaking into Polenik's home and raping her. (Doc. 17, ¶¶ 31-38, 39-41, 52). Polenik also alleges Moser created a hostile work environment by making sexual jokes at Polenik's

expense and telling her she could be a prostitute while at work. (Doc. 17, ¶¶ 39-48). According to Polenik, when she threatened to get the union involved to stop the harassment, Moser became enraged and later threatened to kill her. (Doc. 17, ¶¶ 52, 61, 62).

Polenik alleges she reported Moser's behavior to the police and to her union representative,[1] and in her second amended complaint alleges that the IRS failed to address her fear and concerns. (Doc. 17, ¶¶ 58, 63, 68-69, 75, 94). Because of the harassment and the ensuing emotional distress, Polenik alleges she took a leave of absence from the IRS and had to be hospitalized due to mental health concerns stemming from her interactions with Moser. (Doc. 17, ¶¶ 66, 67, 75, 76). Meanwhile, Polenik alleges Moser was transferred to a "more advantageous" position in a new state so that he would no longer be her direct supervisor but could still review her closed cases. (Doc. 17, ¶¶ 78, 79). When Polenik returned to work, she alleges she again encountered a hostile work environment, this time from her coworkers who were upset about being interviewed in connection with Polenik's complaints about Moser. (Doc. 17, ¶¶ 85-86). Polenik states because of the emotional distress from her interactions with Moser and her hostile work environment, she was constructively discharged from her position at the IRS on August 19, 2019. (Doc. 17, ¶¶ 87-90).

In her second amended complaint, Polenik alleges the following Counts in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"); Count I: Sex Discrimination (Doc. 17, ¶¶ 100-06); Count II: Sexual Harassment--Hostile Work Environment (Doc. 17, ¶¶ 107-13); Count III: Sexual Harassment--*Quid Pro Quo* (Doc. 17, ¶¶ 114-20); and Count IV:

---

[1] Polenik alleges that in response to her complaints, her union representative drafted an inaccurate grievance on Polenik's behalf that stated only that Moser had made "disrespectful and unprofessional comments," and made no mention of the sexual harassment. (Doc. 17, ¶¶ 70-71).

Retaliation (Doc. 17, ¶¶ 121-29). As relief, Polenik requests injunctive relief and money damages. (Doc. 17, at 15).

On June 22, 2023, Defendant IRS filed a motion to dismiss the second amended complaint. (Doc. 19). Defendant IRS filed a brief in support of the motion to dismiss on July 28, 2023. (Doc. 22). Polenik filed a brief in opposition of Defendant IRS's motion to dismiss on September 15, 2023. (Doc. 26). Defendant IRS filed a reply brief on September 29, 2023. (Doc. 27). Accordingly, the motion has been fully briefed and is ripe for discussion. (Doc. 19; Doc. 22; Doc. 26; Doc. 27).

## II.    RULE 12(B)(6) MOTION TO DISMISS STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint are true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). Although a court must accept the factual allegations in a complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal Conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). Additionally, a court need not assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. V. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the United States Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that,

because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In evaluating a motion to dismiss, a court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

## III. DISCUSSION

Polenik brings her claims against Defendant IRS pursuant to Title VII. (Doc. 17, at 11-14). Title VII prohibits discrimination in employment based on, among other things, race, gender, and sex. *See E.E.O.C. v. Allstate Ins. Co.*, 778 F.3d 444, 448-49 (3d Cir. 2015) (citing 42 U.S.C. § 2000e-2(a)). To survive a motion to dismiss on a Title VII claim, the plaintiff "need only set forth sufficient facts to raise a reasonable expectation that discovery will reveal evidence that [the plaintiff] was a member of a protected class and that she suffered an adverse employment action." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 791 (3d Cir. 2016). "[D]etailed pleading is not generally required" but the plausibility standard requires that pleading show "'more than a sheer possibility that a defendant has acted unlawfully.'" *Connelly*, 809 F.3d at 786 (quoting *Iqbal*, 556 U.S. at 678). Defendant IRS argues Polenik has failed to do so for each of the Counts listed in her complaint and that Polenik has failed to exhaust her administrative remedies for her constructive discharge claim. (Doc. 22, at 11). Polenik maintains her complaint sufficiently pleads her claims under Title VII. (Doc. 26, at 7-8).

A. Count I: Sex Discrimination

To establish a prima facie case for discrimination under Title VII, Polenik must sufficiently allege "1) [she] is a member of a protected class; 2) [she] was qualified for the position [she] sought to attain or retain; (3) [she] suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination."[2] *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008) (formatting modified). The Parties dispute whether Polenik suffered an adverse action. (Doc. 22, at 12-13; Doc. 26, at 10-12; Doc. 27, at 2-3). Polenik alleges she suffered an adverse action because, among other things, she was constructively discharged.[3] (Doc. 17, ¶¶ 87-93; Doc. 26, at 11).

---

[2] When a plaintiff establishes a prima facie case for discrimination under Title VII, "an inference of discriminatory motive arises and the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action," an analysis known as the *McDonnell-Douglas* burden shifting analysis. *Makky,* 541 F.3d at 214. Here, Defendant IRS argues Polenik has failed to establish a prima facie case for her discrimination claim but does not address whether there was "a legitimate, non-discriminatory reason" for the alleged adverse actions. (Doc. 22); *Makky,* 541 F.3d at 214. Thus, the Court will not apply the burden shifting framework at this stage in the litigation, as it is more properly applied as the case proceeds through discovery. *See Kortyna v. Lafayette Coll.,* 726 F. App'x 934, 938 (3d Cir. 2018) (stating the *McDonnell-Douglas* burden shifting analysis should be applied at the summary judgment stage, as it is an evidentiary standard, not a measure of whether a complaint fails to state a claim).

[3] Polenik also argues she suffered additional adverse actions, including workplace harassment, threats from her supervisor, and the IRS's failure to address a hostile work environment. (Doc. 26, at 10). These actions, although otherwise scrutinized in this memorandum, do not rise to the level of adverse actions under the law because they do not "effect a material change in the terms or conditions of [Polenik's] employment." *Deans v. Kennedy House, Inc.,* 998 F. Supp. 2d 393, 410 (E.D. Pa.), *aff'd,* 587 F. App'x 731 (3d Cir. 2014); *see Martinez v. City of Union City,* No. CV2111111KMAME, 2021 WL 5195708, at *7 (D.N.J. Nov. 8, 2021) (providing harassment does not qualify as an adverse employment action); *see also Jones v. Se. Pa. Transp. Auth.,* 796 F.3d 323, 327 (3d Cir. 2015) ("severe and pervasive sexual harassment" and a "hostile work environment" were not recognized to be adverse employment actions, but as claims independently actionable under Title VII); *Fields v. Am. Airlines, Inc.,* No. CV 19-903-KSM, 2023 WL 6391689, at *22 (E.D. Pa. Sept. 29, 2023)

In a Title VII discrimination case, the alleged adverse employment action must be "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Jones v. SEPTA*, 796 F. 3d 323, 326 (3d Cir. 2015) (quoting *Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 764 (3d Cir. 2004) (internal quotation marks omitted)). A constructive discharge constitutes an "adverse employment action" for purposes of a Title VII discrimination claim because "it is the legal equivalent of being terminated." *Ellingsworth v. Hartford Fire Ins. Co.*, 247 F. Supp. 3d 546, 556 (E.D. Pa. 2017); *see Lockhart v. Energy Transfer Partners, LP,* No. 2:20CV258, 2022 WL 4553183, at *24 (W.D. Pa. Sept. 29, 2022) (stating a constructive discharge is an adverse employment action). "Constructive discharge occurs when an employer knowingly permit[s] conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign." *Chandler v. La-Z-Boy, Inc.*, 621 F. Supp. 3d 568, 575 (E.D. Pa. 2022) (quoting *Spencer v. Wal-Mart Stores, Inc.,* 469 F.3d 311, 317 n.4 (3d Cir. 2006)).

Polenik contends she was constructively discharged because the hostile work environment created first by Moser and then her peers, as well as the emotional distress from her experience working under Moser, forced her to resign from the IRS, where she planned to work until she retired. (Doc. 17, ¶¶ 87-93, 95, 125). According to Polenik, the IRS knew of Polenik's intolerable conditions, yet did nothing to address her complaints about Moser, "allowed Plaintiff's coworkers to foster a retaliatory hostile environment towards Plaintiff," and failed to enforce "prohibitions against reprisal and retaliation for complaints[.]" (Doc. 17, ¶¶ 75, 86). Because ultimately "constructive discharge is a fact intensive inquiry," and

---

(threats of termination do not constitute adverse employment actions because if they are never carried out, they do not have an actual effect on employment).

Polenik has satisfied the liberal pleading standard to establish she was constructively discharged, she has sufficiently alleged she suffered an adverse employment action for the purposes of a motion to dismiss. (Doc. 17, ¶¶ 87-93); *Searls v. City of Meadville,* No. CA 09-15ERIE, 2009 WL 5111799, at *4 (W.D. Pa. Dec. 18, 2009) ("The inquiry as to whether Plaintiff's voluntary resignation rises to the level of a constructive discharge is a fact intensive question that is inappropriate at this early stage of the proceedings on a motion to dismiss."); *see also Hill v. Borough of Kutztown,* 455 F.3d 225, 232 n.7 (3d Cir. 2006) (deeming it "inappropriate for the District Court to decide that fact-intensive question in the context of a 12(b)(6) motion."); *see also Winkler v. Progressive Bus. Publications,* 200 F. Supp. 3d 514, 520 (E.D. Pa. 2016) (providing that failure to address employee misconduct and protect a female employee from an allegedly predatory coworker may constitute constructive discharge). Accordingly, Defendant IRS's motion to dismiss Polenik's Title VII discrimination claim is **DENIED**. (Doc. 19).

B. <u>Count II: Sexual Harassment / Hostile Work Environment</u>

To establish a hostile work environment claim due to sexual harassment under Title VII, Polenik must sufficiently allege that: "1) [she] suffered intentional discrimination because of [] sex, 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected [her], 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of respondeat superior liability." *Mandel v. M &Q Packaging Corp.,* 706 F.3d 157, 167 (3d Cir. 2013); *see also Minarksy v. Susquehanna Cnty.,* 895 F.3d 303, 310 (3d Cir. 2018). While the first four elements establish the plaintiff suffered a hostile work environment, the fifth element determines employer liability. *Huston v. Procter & Gamble Paper Prods. Corp.,* 568 F.3d 100, 104 (3d Cir. 2009). Defendant IRS and Polenik dispute the fifth

element, whether Polenik has failed to establish *respondeat superior* liability. (Doc. 22, at 14-18; Doc. 26, at 13-15; Doc. 27, at 3-4).

"[A]n employer is vicariously liable to a victimized employee 'for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee.'" *Hitchens v. Montgomery Cnty.*, 278 F. App'x 233, 235-36 (3d Cir. 2008) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998)). For an employer to be automatically liable for a supervisor's conduct, the supervisor must have taken some "tangible employment action" against the employee, which includes, "discharge, demotion, or undesirable reassignment." *Hitchens*, 278 F. App'x at 236 (quoting *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 765 (1998)). Absent this tangible employment action, the employer may assert the *Faragher-Ellerth* affirmative defense by showing they "exercised reasonable care to prevent and correct promptly any sexually harassing behavior. . . and that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. . ." *Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 150 (3d Cir. 1999); *see also Hitchens*, 278 F. App'x at 236.

The parties do not dispute that Moser was acting as Polenik's supervisor at the time of the alleged abuse. The issue is whether Polenik has sufficiently alleged Moser took a "tangible employment action" against her such that liability may automatically be imposed on Defendant IRS. *Hitchens*, 278 F. App'x at 236. The Court finds she has not.

First, because Polenik does not allege Moser took any official actions (i.e. Polenik does not allege Moser …discharge, demotion, or undesirable reassignment) against Polenik to spur her constructive discharge, Polenik's resignation does not qualify as a "tangible employment act" in the context of her hostile work environment claim and thus does not

preclude Defendant IRS from asserting the *Faragher-Ellerth* affirmative defense. (Doc. 17, ¶¶ 87-93); *Pennsylvania State Police v. Suders*, 542 U.S. 129, 148 (2004) (holding, "when an official act does not underlie the constructive discharge, the *Ellerth* and *Faragher* analysis, we here hold, calls for extension of the affirmative defense to the employer."). Second, while Moser threatened to put Polenik on a performance improvement plan, the second amended complaint does not allege he followed through with this threat or that he took any other action against Polenik in his capacity as her supervisor. (Doc. 17, ¶¶ 52-53). Because threats do not constitute a "tangible employment action," Polenik has again failed to allege Defendant IRS is precluded from raising the *Faragher-Ellerth* affirmative defense. *Hitchens*, 278 F. App'x at 236; *see* *Doe v. McDonald's USA, LLC*, No. CV 19-05925, 2022 WL 1793040, at *6-7 (E.D. Pa. June 2, 2022) (discussing the applicability of the *Faragher- Ellerth* defense where plaintiff failed to allege that their supervisor who created a hostile work environment had taken a tangible employment action against them); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 753-54 (1998) (finding "unfilled threats" to be insufficient as a "tangible employment action"); *see also* *Graves v. Cnty. of Dauphin*, 98 F. Supp. 2d 613, 625 n.8 (M.D. Pa. 2000).

Based on the allegations set forth in the second amended complaint, Defendant IRS is entitled to raise an affirmative defense to liability for Polenik's hostile work environment claim. *Hitchens*, 278 F. App'x at 236. While an affirmative defense may be raised at the motion to dismiss stage when the defense is apparent from the face of the complaint, affirmative defenses that require factual development should be raised in responsive pleadings, not in a pre-answer motion to dismiss. *Bethel v. Jendoco Const. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978) (providing whether an affirmative defense may be the basis for dismissal of a complaint pursuant to a 12(b)(6) motion depends on whether the defense is apparent from the face of

the complaint); *see Kalan v. Farmers & Merchants Tr. Co. of Chambersburg*, No. CV 15-1435, 2015 WL 13874054, at *1 n.1 (E.D. Pa. Nov. 25, 2015) ("The facts necessary to establish an affirmative defense must generally come from matters outside of the complaint. Thus, with some exceptions, affirmative defenses should be raised in responsive pleadings, not in pre-answer motions brought under Rule 12(b)."); *Robinson v. Varano*, No. 3:CV-10-2131, 2010 WL 5653521, at *5 (M.D. Pa. Dec. 27, 2010), *report and recommendation adopted*, No. 3:10-CV-2131, 2011 WL 290269 (M.D. Pa. Jan. 25, 2011) (supplying that an affirmative defense must be obvious from the face of the complaint to warrant dismissal on a motion to dismiss). Here, facts and matters outside the complaint are necessary to apply the *Faragher-Ellerth* defense and to establish whether reasonable care was used by both parties in their handling of Moser's alleged sexual harassment.[4] *See Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651, 657 (3d Cir.

---

[4] At this juncture in this case, there are factual disputes between the parties regarding both prongs of the *Faragher-Ellerth* defense. Regarding the first prong, whether the IRS exercised reasonable care to prevent and correct promptly any sexually harassing behavior, Defendant IRS argues they exercised reasonable care because "the IRS had an Anti-Harassment Policy and once the IRS discovered the 'inappropriate encounters,' [between Polenik and Moser] it began an investigation, and relocated Ms. Polenik's supervisor, placed him in a different position, and removed him of his supervisory duties over Ms. Polenik." (Doc. 22, at 15); *Hitchens*, 278 F. App'x at 236. Defendant IRS also avers Polenik "alleged no facts that the IRS would have known Ms. Polenik's supervisor would have treated her inappropriately." (Doc. 27, at 3). *Durham Life Ins. Co.*, 166 F.3d at 150. Polenik contends Defendant IRS "did not exercise reasonable care to prevent and correct promptly sexually harassing behavior," and implies that while she did complain of Moser's behavior, the IRS did not take action. (Doc. 17, ¶¶ 75, 94; Doc. 26, at 12); *Durham Life Ins. Co.*, 166 F.3d at 150. Further, Polenik argues while the IRS did launch an investigation when "Mr. Moser 'self-reported' inappropriate encounters," Moser was ultimately rewarded with a better position as a result. (Doc. 17, ¶¶ 79, 94).

Considering the second part of the *Faragher-Ellerth* defense, that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise, Defendant IRS asserts Polenik failed to "blow the whistle" on her abuse or take advantage of the IRS's preventative policies. (Doc. 22, at 15); *Hitchens*, 278 F. App'x at 236. Specifically, Defendant IRS argues "Polenik makes no mention why she did not contact her supervisor's managers, report the alleged harassment to

2003) (refusing to decide the applicability of two affirmative defenses on the merits where further development of the record was necessary). Accordingly, Defendant IRS's motion to dismiss Polenik's Title VII sexual harassment/hostile workplace claim is **DENIED,** but Defendant IRS may assert the *Faragher-Ellerth* affirmative defense later in this litigation. (Doc. 19); *See Yacapsin v. Messiah Univ.*, No. 1:22-CV-00617, 2023 WL 1928794, at *5 (M.D. Pa. Feb. 10, 2023) ("motions to dismiss are generally denied when they are predicated on a defense that requires a factual review to establish.").

C. COUNT III: *QUID PRO QUO* SEXUAL HARASSMENT

To allege a *quid pro quo* sexual harassment claim under Title VII, Polenik must contend: 1) she received unwelcomed sexual advances and 2) her response to the unwelcome sexual advances was subsequently used as a basis for a tangible employment action such as a decision about her compensation or the terms of her employment. *Starnes v. Butler Cnty. Ct. of Common Pleas, 50th Jud. Dist.,* 971 F.3d 416, 427 (3d Cir. 2020). The Parties dispute whether Polenik has sufficiently alleged the second prong, that her complaints about Moser were used as the basis for a tangible employment decision. (Doc. 22, at 18-19; Doc. 26, at 15-16; Doc. 27, at 5-6); *Starnes,* 971 F.3d at 427. Defendant IRS argues Polenik "simply has not alleged a

---

the anti-harassment program office or why she waited so long to report this misconduct." (Doc. 22, at 16); *Durham Life Ins. Co.*, 166 F.3d at 150. Polenik alleges she tried to report Moser's behavior to her union representative multiple times, but that she was discouraged by how her allegations were inaccurately portrayed and that when she did file a complaint with the IRS, Polenik was punished with a work environment "so hostile so as to make subjection to a hostile work environment a condition of Plaintiff's employment." (Doc. 17, ¶¶ 58, 60, 63, 71-73, 86, 89).

Factual development of these positions would better assist the Court in determining the applicability of the *Faragher-Ellerth* affirmative defense.

change in her terms, conditions, or privileges of employment" and therefore has not established a claim for *quid pro quo* discrimination. (Doc. 22, at 18-19). Polenik claims she demonstrated a change in her employment through her constructive discharge as well as Moser's threat to put her on a performance improvement plan. (Doc. 26, at 15). Additionally, Polenik states, "Moser's conduct and retaliation became so ingrained in Plaintiff's terms and conditions of employment that she was left at the whim of Moser's desires and intent to keep his actions secret, or Plaintiff was threatened with discipline and harm." (Doc. 26, at 16).

Polenik has failed to sufficiently allege *quid pro quo* sexual harassment. First, constructive discharge alone cannot be the basis for a *quid pro quo* sexual harassment claim. (Doc. 17, ¶¶ 87-93); *see Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 28 (3d Cir. 1997) (supplying constructive discharge alone is insufficient to establish a *quid pro quo* harassment claim where there is no evidence of a forced resignation); *see also Doe v. McDonald's USA, LLC*, No. CV 19-05925, 2022 WL 1793040, at *7 (E.D. Pa. June 2, 2022) (dismissing a *quid pro quo* harassment claim premised on constructive discharge). Second, the Court agrees with Defendant IRS that unfulfilled threats to take a tangible employment action do not rise to the level of "*quid pro quo*" harassment. (Doc. 22, at 19); *see Ellerth*, 524 U.S. at 754 (explaining that unfulfilled threats are better analyzed as a claim for hostile work environment, not *quid pro quo* harassment). Also, it is unclear from the second amended complaint whether, even if fulfilled, Moser's threat to put Polenik on a performance improvement plan would have resulted in a change in Polenik's overall employment. Accordingly, Polenik has failed to sufficiently allege *quid pro quo* sexual harassment under Title VII and Defendant IRS's request that the claim be

dismissed is **GRANTED**.[5] (Doc. 19). Polenik's claim for *quid pro quo* sexual harassment is **DISMISSED WITH PREJUDICE**.

### D. COUNT IV: RETALIATION

A cause of action for retaliation under Title VII requires Polenik to show: "1) she engaged in activity protected by Title VII; 2) the employer took an adverse employment action against her; and 3) there was a causal connection between her participation in the protected activity and the adverse employment action." *Davis v. City of Newark*, 285 F. App'x 899, 904 (3d Cir. 2008) (quoting *Nelson v. Upsala Coll.*, 51 F.3d 383, 386 (3d Cir. 1995) (formatting modified). "A retaliatory action is considered to be 'materially adverse' to an employee if it might have dissuaded an objectively reasonable employee from engaging in statutorily-protected conduct." *Mitchell v. Miller*, 884 F. Supp. 2d 334, 378 (W.D. Pa. 2012) (quoting *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 67–71 (2006)).

Defendant IRS argues the only protected activity detailed in the second amended complaint is Polenik's filing a complaint with the Equal Employment Opportunity Commission ("EEOC") on June 10, 2019. (Doc. 22, at 20). Defendant IRS continues that the

---

[5] The United States Supreme Court de-emphasized the distinction between *quid pro quo* and hostile work environment sexual harassment claims in *Burlington Indus., Inc. v. Ellerth,* and *Faragher v. City of Boca Raton.* 524 U.S. 742 (1998); 524 U.S. 775 (1998). In these cases, a distinction was instead drawn between "cases involving a threat which is carried out and offensive conduct in general." *Ellerth,* 524 U.S. at 753. "A threat carried out," equates to a tangible employment act, which prior to the Court's holding, would have been understood as *a quid pro quo* claim. *Ellerth,* 524 U.S. at 765. For such a claim, an employer is automatically liable for a supervisor's actions. *Ellerth,* 524 U.S. at 765. As discussed *supra*, a hostile work environment claim may exist where there is no tangible employment action, and in such cases, the employer may assert the *Faragher-Ellerth* affirmative defense to liability. *See Fugarino v. Univ. Servs.*, 123 F. Supp. 2d 838, 845 n.2 (E.D. Pa. 2000) (explaining the Supreme Court's the distinction between a *quid pro quo* and hostile work environment sexual harassment claim).

only actions Polenik alleges occurred between her filing the Equal Employment Opportunity ("EEO") complaint and her resignation were 1) the IRS sent Polenik a notice that she had depleted her sick leave, 2) something about Polenik not receiving a building code, and 3) Polenik's peers retaliated against her. (Doc. 22, at 20-21). According to Defendant IRS, these occurrences are not adverse actions as they are they would not dissuade a reasonable worker from reporting discrimination. (Doc. 22, at 21).

Citing *Burlington N. & Santa Fe Ry. Co. v. White*, Polenik states she need not prove an adverse employment action to establish her retaliation claim, but that "'a reasonable employee would have found the challenged action materially adverse, which in this context means it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" (Doc. 26, at 18); 548 U.S. 53 (2006). Polenik argues, "Moser's threats against Plaintiff's job, health, and life . . . would tend to discourage a reasonable person from engaging in further protected activity, such as pursuing a claim of discrimination." (Doc. 26, at 18-19).

Polenik's filing of an EEO complaint undoubtedly constitutes protected activity. (Doc. 17, ¶ 11); *see Stevens v. City of Philadelphia*, No. CV 17-4853, 2018 WL 3328057, at *2 (E.D. Pa. July 6, 2018) (recognizing filing an EEO complaint to be protected activity); *see also Brown v. Pennsylvania*, No. 1:14-CV-00201, 2017 WL 762009, at *4 (M.D. Pa. Jan. 30, 2017), *report and recommendation adopted*, No. 1:14-CV-201, 2017 WL 748934 (M.D. Pa. Feb. 27, 2017) ("it is well settled that [Plaintiff's] allegation of sexual harassment and subsequent filing of an EEO charge constitutes protected activity under Title VII"). However, "protected . . . activity includes not only an employee's filing of formal charges of discrimination against an employer but also 'informal protests of discriminatory employment practices, including making

14

complaints to management.'" *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015) (quoting *Curay–Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d 130, 135 (3d Cir. 2006)). Accordingly, Polenik's complaints to her union representative about Moser's alleged sexual harassment and abuse also constitute protected activities. (Doc. 1, ¶ 58, 63); *see Kacian v. Postmaster Gen. of United States*, 653 F. App'x 125 (3d Cir. 2016) (finding complaints to a postal worker's union president regarding sexual harassment constituted protected activity); *Lee v. Pennsylvania, Dep't of Health*, No. CIV.A.07-677, 2007 WL 2463404, at *3 (W.D. Pa. Aug. 28, 2007) (recognizing complaints to a union representative about sexual harassment are sufficient as "protected activities" for a Title VII retaliation claim).

As a result of filing her EEO complaint, Polenik alleges retaliation through the creation of a hostile work environment from her peers, who were allegedly upset with Polenik because they had been interviewed as a result of the complaint. (Doc. 17, ¶¶ 85-90). As a result of Polenik's interaction with the union, who Polenik alleges failed to adequately address her sexual harassment claims, Polenik contends Moser threatened to kill her, resulting in her needing to take a leave of absence for mental health and safety purposes. [6] (Doc. 17, ¶¶ 57, 61, 66-67). Polenik alleges the stress and hostility fostered by all these events resulted in her being constructively discharged. (Doc. 17, ¶¶ 87-93). For the purpose of a motion to dismiss, the Court is satisfied that Polenik suffered materially adverse consequences that would dissuade a reasonable worker from engaging in protected activities as a result of both her filing

---

[6] The U.S. Equal Employment Opportunity Commission recognizes that efforts to block access to a union's grievance process and remedial mechanisms may be actionable as retaliation. *Questions and Answers: Enforcement Guidance on Retaliation and Related Issues,* U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION (last visited Nov. 9, 2023) https://www.eeoc.gov/laws/guidance/questions-and-answers-enforcement-guidance-retaliation-and-related-issues.

the EEO complaint and complaining to her union representative. (Doc. 17, ¶¶ 57, 61, 66-67, 85-90); *see Ellingsworth v. Hartford Fire Ins. Co.*, 247 F. Supp. 3d 546, 555 (E.D. Pa. 2017) (finding a constructive discharge to be a materially adverse action for the purpose of a Title VII retaliation claim); *see also Smith v. RB Distribution, Inc.*, 498 F. Supp. 3d 645, 664 (E.D. Pa. 2020) (finding "general antagonism" and failure to investigate sexual harassment claims are sufficient adverse actions in the context of a retaliation claim); *see also O'Day v. Wilkes-Barre Area Sch. Dist.,* No. 3:22-CV-00921, 2023 WL 4306749, at *4-5 (M.D. Pa. June 30, 2023) (stating constructive discharge is an adverse action for the purpose of a retaliation claim).

Accordingly, Defendant IRS's motion to dismiss Polenik's claim of retaliation is **DENIED**. (Doc. 19).

E. Exhaustion of Polenik's Constructive Discharge Claim

To file a civil lawsuit under Title VII, a plaintiff must exhaust claims at the administrative level. *Burgh v. Borough Council of Montrose*, 251 F.3d 465, 469 (3d Cir. 2001). "The relevant test in determining whether appellant was required to exhaust her administrative remedies. . . is whether the acts alleged in the subsequent Title VII suit are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." *Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir. 1984). This also includes "new acts which occurred during the pendency of the proceedings before the Commission" and "turns on whether the allegations in the judicial complaint are reasonably related to those in the administrative charge." *Ostapowicz v. Johnson Bronze, Co.*, 541 F.2d 394, 398 (3d Cir. 1976); *Kopko v. Lehigh Valley Health Network*, 776 F. App'x 768, 773 (3d Cir. 2019).

Defendant IRS argues that Polenik failed to exhaust administrative remedies as to her constructive discharge claim. (Doc. 22, at 21-23). Polenik does not contest that she did not

exhaust this claim in her brief in opposition, however, in her second amended complaint she alleges she "exhausted her administrative remedies under Title VII" by timely filing the requisite EEO complaint "alleging sexual harassment and retaliation in accordance with the applicable administrative remedy procedures" and that she timely filed a Charge of Discrimination with the EEOC. (Doc. 17, ¶¶ 9-11; Doc. 26; Doc. 27, at 8). The second amended complaint then details all the necessary steps Polenik took to fully exhaust administrative remedies before filing her first complaint.[7] (Doc. 17, ¶¶ 12-18).

"Failure to exhaust administrative remedies in an employment discrimination case is not a jurisdictional bar to a plaintiff's suit, but rather is an affirmative defense, in the nature of a statute of limitation." *Ackah v. Pennsylvania Dep't of Corr.*, No. 4:08-CV-0376, 2008 WL 11366478, *6 (M.D. Pa. November 14, 2008) (citations omitted). Plaintiff need only allege that she satisfied the exhaustion requirements for Title VII to survive a motion to dismiss. *See Elberson v. Pennsylvania*, No. 1:06-CV-2143, 2008 WL 906494, at *7 (M.D. Pa. Mar. 31, 2008). *Cf. Twillie v. Erie School Dist.*, 575 F. App'x 28, 29-31 (3d Cir. 2014) (granting defendant's motion to dismiss Title VII claim based on plaintiff's failure to exhaust administrative remedies after holding an oral argument on the motion and twice granting plaintiff leave to

---

[7] The second amended complaint provides the following: "Plaintiff timely filed an EEO complaint alleging sexual harassment and retaliation in accordance with the applicable administrative remedy procedures applicable to Federal Agencies and filed a timely written Charge of Discrimination (the "Charge") with the EEOC alleging sexual harassment and retaliation against Defendants." (Doc. 17, ¶ 10). Defendant IRS contacted an EEO Counselor at the IRS "on or around" June 10, 2019. (Doc. 17, ¶ 11). After receiving her right to sue notice on September 19, 2019, Defendant IRS filed a formal complaint on October 8, 2019. (Doc. 17, ¶ 12). Defendant IRS's EEOC charge was also filed with the Pennsylvania Human Rights Commission. (Doc. 17, ¶ 14). Defendant IRS initiated this suit after receiving her Final Agency Decision on July 28, 2022, and notifying the EEOC of her intent to proceed with a lawsuit in federal court. (Doc. 17, ¶¶ 15-17). Accordingly, Polenik alleges she "has exhausted her administrative remedies as to the allegations of this Complaint." (Doc. 17, ¶ 18).

amend in the face of earlier motions to dismiss because at that point plaintiff was on notice of "need to exhaust her claims administratively before raising them in a federal court."). Because the EEO complaint was not attached to the second amended complaint or to any of the parties' motions, it is impossible to determine whether Polenik's constructive discharge claim "is fairly within the scope of the prior EEOC complaint" or "reasonably related" to the claims therein. [8] *Waiters*, 729 F.2d at 237; *Kopko*, 776 F. App'x at 773. Regardless, since Polenik has alleged she satisfied the exhaustion requirements for her claims, she has satisfied her pleading requirement to survive a motion to dismiss. *See Niculcea v. Stone Ridge Towne Ctr.*, No. 1:17-CV-02096, 2019 WL 1338915, at *4-5 (M.D. Pa. Mar. 7, 2019), *report and recommendation adopted*, No. 1:17-CV-2096, 2019 WL 1330362 (M.D. Pa. Mar. 25, 2019) (recommending the court deny Defendants' motion to dismiss on the basis of failure to exhaust where plaintiff alleged she exhausted administrative remedies in her complaint).

## IV.  LEAVE TO AMEND

The Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). The Court finds in this case amendment would be futile as there are no allegations in Polenik's second amended complaint to suggest she would be able to cure the deficiencies

---

[8] Even if the EEO complaint does not specifically identify Polenik's alleged constructive discharge, the loose pleading standard for exhaustion and the "reasonably related" standard likely will still permit a finding that Polenik adequately exhausted her administrative remedies. *See Rufo v. Metro. Life Ins. Co.*, No. CIV.A. 96-6376, 1997 WL 164267, at *4 (E.D. Pa. Apr. 7, 1997) (stating, "although this constructive discharge claim. . . is, by definition, missing from the EEOC complaint, it is nonetheless, subject to a 'reasonably related' exception[,]" in a case involving Title VII claims).

outlined regarding her quid pro quo harassment claim. Additionally, Polenik has already filed two amended complaints. Accordingly, the Court declines to extend leave to amend.

## V.     CONCLUSION

For the foregoing reasons, Defendant IRS's motion to dismiss for failure to state a claim (Doc. 19) is **GRANTED** in part and **DENIED** in part. Polenik's claim for *quid pro quo* sexual harassment (Count III) is **DISMISSED WITH PREJUDICE**.

An appropriate Order follows.

BY THE COURT:


Dated: **April 4, 2024**                                   *s/ Karoline Mehalchick*
                                                                          **KAROLINE MEHALCHICK**
                                                                          **United States District Judge**